# H. W. Riley, Appellee, v. L. J. Lamson et al., Appellants.

1. APPEALS AND ERRORS—*what must be preserved by bill of exceptions.* A motion to dismiss, predicated upon lack of jurisdiction of the person of the defendant, in order to be preserved for review, must be incorporated in the bill of exceptions.

2. APPEALS AND ERRORS—*when bill of exceptions must be filed.* A bill of exceptions must be presented, allowed or signed at the term at which the orders excepted to were entered or else there must be some provision by order entered at such term that the bill of exceptions may be presented at a subsequent term.

3. APPEALS AND ERRORS—*when pleas must be preserved by bill of exceptions.* Pleas in abatement presented with a motion for leave to file the same are not preserved for review unless incorporated in the bill of exceptions.

4. JURISDICTION—*what waives question of.* If defendants prior to raising a question of jurisdiction of their persons appear and plead to

the merits such jurisdictional question is waived.

5. PRACTICE—*section 6 of Act construed.* This section which provides that no judgment in a personal action shall be rendered against a non-resident defendant who has been served out of the county when the action has been dismissed as to a defendant or defendants resident in the county, is not to be construed so as to render the court absolutely powerless to enter a judgment against non-resident defendants even though they consent that the trial shall proceed and the case determined on the merits.

6. GAMBLING—*what essential to establish illegality of transactions in grain.* In order to establish that transactions in grain were illegal and gambling in character it must be shown by a preponderance of the evidence that the intention not to deliver or receive delivery was mutual and common to the parties to the transaction.

Assumpsit. Appeal from the Circuit Court of Champaign county; the HON. SOLON PHILBRICK, Judge, presiding. Heard in this court at the May term, 1911. Reversed and remanded. Opinion filed October 20, 1911. *Certiorari* denied by Supreme Court (making opinion final).

HENRY I. GREEN and MOSES, ROSENTHAL & KENNEDY, for appellants; JOSEPH W. MOSES, of counsel.

LEFORGEE, VAIL & MILLER, CRAIG & KINZEL and H. LEONARD JONES, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpsit brought to the September term, 1908, of the circuit court of Champaign county against S. L. Rufty and L. J. Lamson, W. A. Lamson and L. F. Gates. Service was had upon the defendant Rufty in Champaign county, and upon the other defendants in Cook county.

The original declaration consisted of three special counts, and the common counts. The first special count charges that on and prior to April 23, 1907, the plaintiff was engaged in the grain business in Tolona, Illinois, and that the defendants were engaged in business in Chicago, Illinois; that at their instance and request, the plaintiff agreed to sell the defendants large

quantities of grain, corn, wheat and oats, to be by him delivered to the defendants within a reasonable time thereafter, for which the defendants agreed to pay the reasonable market value; that upon various dates from August 28, 1907, until September 19, 1907, the plaintiff delivered into the hands of the defendants large quantities of grain, which they accepted and received, and that the reasonable market value thereof was the sum of, to-wit, $5,000, which the defendants became bound to pay but which they had refused to pay. The second and third special counts were superseded by the amended counts hereinafter set out. To this declaration the defendants, L. J. Lamson, W. A. Lamson and L. F. Gates, pleaded the general issue, the Statute of Limitations, and denial of joint liability with the defendant Rufty. At the succeeding term of court, a demurrer to the latter plea was sustained by the court, and leave given to amend the same by the following morning. The court then dismissed the suit as to the defendant Rufty, and entered a rule upon the remaining defendants to plead thereto *instanter*. The said defendants thereupon entered a written cross-motion, upon their limited appearance, to dismiss the cause as to them, on account of the dismissal as to Rufty, and because of the fact, appearing from the records and files in said cause, that neither of the defendants was found or served in Champaign county, and that the action was not local in that county. This cross-motion was overruled by the court. The defendants, still limiting their appearance, then presented to the court a plea in abatement as to the jurisdiction of the court, and moved in writing for leave to file the same; which plea alleged that before and at the time of the commencement of the said action, they, and each and all of them were, and from thence henceforth had been; and still were, each and all residing in the county of Cook and State of Illinois, and not in said county of

Champaign; and that they and each and all of them was and were not found or served with process in said action in said county of Champaign, but were each and all found and served with process in said action in said county of Cook; and that no process had been served upon either of said defendants in said action in said county of Champaign.

Leave to file said plea in abatement was denied, whereupon the plaintiff filed an amended declaration, consisting of two special counts, the first of which followed substantially the allegations of the second special count of the original declaration, and the second of which corresponded substantially with the third special count of the original declaration. Said amended counts omitted any reference to Rufty as a defendant. The first thereof charged that ''defendants were engaged in business on the Board of Trade in the City of Chicago and were members of an organization known as the 'Chicago Board of Trade,' and as part of the defendants' business they were handling, betting and wagering on the future market price of grain in the said city of Chicago aforesaid, and that defendants on and prior to September 3, 1907, had a branch office in Tolona, Champaign county, Illinois, under the charge, management and control of an agent of the defendants, one S. L. Rufty, who was acting in conjunction with the defendants; that the said S. L. Rufty at said office took and received divers orders from divers customers and patrons living in and about Tolona, Champaign county, in behalf of the defendants, for the wagering and betting on the market price of grain,'' etc., ''which orders were at the special instance of and for the defendants by said Rufty communicated and addressed to the defendants and by them executed upon the Board of Trade, upon the understanding between the parties placing the orders in Tolona and the parties dealing upon the Board of Trade in Chicago, that the grain so

represented by said orders would not be delivered: * * * that the plaintiff did, prior to the date aforesaid, through the said office at Tolona, enter into a large number of gaming transactions whereby he made, with the defendants, the pretended purchase and sale of a large amount of grain, to-wit, one million bushels, delivery of which it was understood and agreed between the defendants and the plaintiff, should not be delivered by the pretended seller nor received by the pretended buyer; that all of said pretended purchases and sales were so made by the plaintiff with the defendants for pretended future dates of delivery, and upon the agreement and understanding that before and at the time set for such pretended delivery, said transaction so existing between the plaintiff and the defendants should be closed out as between them without any delivery of the grain, or any part thereof, and a settlement made between the plaintiff and the defendants solely upon the difference between the price of such grain at the time it was bought and sold in the first instance and afterwards closed out, as shown and disclosed by fluctuations in the alleged market price thereof; that the defendants demanded from the plaintiff, as margins, a large sum of money, to-wit, ten thousand dollars, which the defendants received as and for their own property, and have from thence hitherto held and possessed the same, and by virtue of the said alleged transaction the said money became and was wholly lost to the plaintiff," etc.

The second amended count, after making the same preliminary recital as to the business of the defendants in Chicago and their membership in the Board of Trade, and their opening of a branch office in Tolona for the receipt of orders for and in their behalf for the wagering and betting on the future market price of grain, etc., charged that "said orders were at the special instance of and for the defendants by one of

said defendants so stationed at Tolona as aforesaid communicated and addressed to the defendants, to be by them executed upon the Board of Trade in Chicago upon the agreement and understanding between said parties so ordering and the defendants that the grain would not be delivered," etc.; * * * "that the plaintiff upon said September 1st, 1907 entered into a large number of transactions, whereby he made the pretended sale and purchase of a large amount of grain, to-wit, one million (1,000,000) bushels, the delivery of which it was agreed between him and the defendants should be made by the seller nor received by the purchaser; that each of said pretended sales and purchases so made were afterwards closed out by the defendants, and that no grain or other commodity was exchanged or delivered as represented in the orders made by the defendants to the plaintiff, but that said transactions were settled upon the differences between the price bought and sold as shown by the fluctuations of the market at the time the transaction was closed; that the defendants demanded from the plaintiff, in the course of such transactions, a large sum of money, as commissions for their services as brokers in and about such transactions, which the plaintiff paid to the defendants in the furtherance of the carrying on thereof, whereby the plaintiff paid to the defendants as such commissions for their services a large sum, to-wit, $5,-134.80, which the defendants received and have since held and refused to pay to the plaintiff," etc.

After said motions to dismiss for want of jurisdiction, and for leave to file their plea in abatement to the jurisdiction, had been denied, the defendants, pursuant to a rule entered upon them to plead to the amended declaration, on the same day filed the pleas of general issue, and pleas of Statute of Limitations, by one alleging that all the losses occurred more than six months prior to the commencement of the suit, and by the other

that the said alleged losses, and all of them, occurred more than six months prior to the filing of the amended declaration and that therefore said supposed causes of action were barred by virtue of section 132, chapter 38, of the Criminal Code. A demurrer to the last plea was sustained by the court, and general replications filed to the plea of the general issue and the first special plea of the Statute of Limitations. A bill of particulars was filed with the amended declaration, consisting of the usual copy of the account sued on under the consolidated common counts.

The issues having been joined, a trial was had at the April term, 1910, and a verdict was returned finding the defendants not guilty. A new trial was allowed and the cause continued. The cause was again tried on September 6, 1910, and at the conclusion of the evidence offered by the plaintiff, and again at the close of all the evidence, motions by the defendants for a directed verdict in their favor were overruled. Upon motion of the plaintiff, the court then directed the jury to find the issues for the plaintiff and assess his damages at $6,802.55, and the jury thereupon returned a verdict to that effect. The defendants then entered their motion for a new trial, but before the same was heard, they entered their motion in writing for leave to withdraw their motion for new trial, without prejudice to the right to renew the same, and to enter a motion to vacate and set aside the verdict and dismiss the cause for want of jurisdiction. This motion was supported by the affidavits of each of the defendants, which set out that they were each, at the time of the institution of the present action and from thence hitherto had been at all times, residents of the county of Cook, State of Illinois, and that they were not then and never had been residents of Champaign county, Illinois; that they had each and all been served with process in said action in the county of Cook and not

in the county of Champaign, and that neither of the affiants, nor said firm of Lamson Brothers and Company, ever had an office or place of business in said Champaign county. The places of residence of each of said affiants were given by street and number, as well as the place of business of Lamson Brothers and Company, in Chicago. All of said motions were overruled. The defendants thereupon moved to dismiss said cause for want of jurisdiction of their persons, and offered in support of said motion the same affidavits. Said motion was likewise overruled. The motion for new trial then coming on for hearing, was overruled by the court. The defendants thereupon renewed their former motion to dismiss said cause for want of jurisdiction of their persons, which motion was likewise overruled. They then moved in arrest of judgment, because of the alleged lack of jurisdiction of the court to render any judgment in said cause against them, by reason of the dismissal of said action as to the defendant Rufty, and their non-residence in the county of Champaign at all times during the pendency of said action, and the transitory nature of the cause of action as set forth in the amended declaration, and offered to read in support of said motion in arrest of judgment, the affidavits filed by them in support of the motion to dismiss. The court overruled said motion in arrest of judgment, and entered judgment upon the directed verdict for $6,802.

It is first urged that upon the dismissal of the suit as to the defendant Rufty, the circuit court was ousted of jurisdiction of said cause as to the defendants, and had no power thereafter to render any judgment in the same; that the court erred in overruling the defendants' motion for the dismissal of said cause, at the April Term, 1910, for that reason, and in denying leave to the defendants to file the plea in abatement therewith presented. The plaintiff contends that

neither the motions nor the affidavits accompanying them are properly in the record, and has filed his motion in this court to have them stricken. It is well settled that motions of the character in question can be made a part of the record only by being incorporated in a proper bill of exceptions. No bill of exceptions showing these matters was presented, allowed or signed at the April term, 1910, at which the orders excepted to were made, nor is there any order or consent at that term, that such a bill should be signed at any subsequent term. It seems clear, therefore, that these matters have no proper place in the record, and the motion to expunge them therefrom is sustained. Finch v. Furnace Co., 245 Ill. 586.

The defendants admit that if they had simply asked leave to file the plea to the jurisdiction without specifying the character of the plea, or showing in their motion the ground upon which they claimed the right to file the same, the action of the court in depriving them of such right would not be subject to review. They insist, however, that having presented the plea with the motion and filed the same, as a part thereof, and having also set out the grounds relied upon in the motion, the matter became a part of the record without the aid of a bill of exceptions. It will suffice to say that the proffered pleas not having been filed, under leave, independent of the motion, can only be considered as a part of such motion, and the motion itself is not a part of the record proper. Village v. Holland, 99 Ill. App. 251; Johnson v. Glover, 19 Ill. App. 585. The record shows that after the overruling of said motions, in response to the ruling of the court requiring them to plead to the amended declaration, the defendants appeared generally and pleaded to the merits, and that the cause then proceeded to trial. No further effort to raise the question of jurisdiction was thereafter made, until after trial. The defendants must, therefore, be held to have by their personal ap-

pearance waived the right to object to the cause pro-
ceeding against them after the dismissal as to Rufty,
unless, as insisted by the defendants, the court was, by
reason of said dismissal, wholly without jurisdiction
to proceed further, which question could be raised at
any time.   Counsel rely upon section 6 of the Practice
Act,. in support of such position.   They urge that the
effect of the amendment of 1907 to said section, pro-
viding that no judgment in a personal action shall be
rendered against a non-resident defendant who has
been served out of the county, when the action has been
dismissed as to a defendant or defendants resident in
the county, is to render the court absolutely powerless
to enter a judgment against non-resident defendants,
even though they consent that the trial should proceed
and be tried on the merits.   We regard such contention
as without force.   While a plea to the jurisdiction, or a
motion to dismiss predicated upon the fact that a de-
fendant has been sued in the wrong county, is meritor-
ious, and not merely dilatory, the right being a substan-
tial one, we are not prepared to hold that a judgment
entered in an action brought in the wrong county is
absolutely void under the section referred to.   Neither
the language of the Practice Act nor the object of the
amendment, as we understand it, requires such con-
struction.   The sole purpose of such amendment was
clearly to provide against the use of dummy defendants
to obtain jurisdiction of non-residents.   Circuit courts
of this state have jurisdiction over the subject-matter
of the present action.   The defendants thereto were
duly served with process.   If they desired to raise the
objection that the process was served out of the county
of the court for which it issued, they should have
asserted such objection and the right to be sued in the
proper county, before pleading to the merits.   In this
view of the law, the right of the defendants was purely
personal, and was waived.

The evidence shows that prior to the year 1907, the plaintiff was in the grain and coal business at Tolona and Allenville, Illinois; that he also operated a bank at Allenville, Illinois; that at each of said places he maintained a grain elevator; that he handled through such elevators about five hundred thousand bushels of grain in the course of a year; that he was the owner of property of the value of from thirty to fifty thousand dollars, which, however, he claims was equalled by the amount of his indebtedness. In the early part of 1907 he began dealing with the defendants, consigning cars to them to be sold for him and making purchases and sales of grain through them as his brokers and agents upon the Board of Trade in Chicago; that prior to the month of September, his dealings were carried in one general account, but at that time he requested the defendants to keep three separate accounts with him, to be designated as the "Allenville cash grain account," "Tolono cash grain account," and "Tolono speculative account," respectively. In May, 1907, Rufty who was originally a defendant in this action, and who prior to that time had been acting as the representative of the defendants at Tolono, opened an office at that place. Thereafter the defendants acted as his representatives upon the Board of Trade in Chicago, for the purpose of filling orders for his account received by him from his customers, which orders he transmitted to the defendants over a private wire leased by them. On March 11, 1908, there stood to the credit of the plaintiff upon his cash grain account the sum of $6,802.55, while the speculative account showed a balance against him in excess of that sum. Upon his attention being called by the defendants to such fact, he ordered that the credit balance of the former account be transferred to the latter, which was accordingly done. The present judgment is for the sum so transferred.

It is not controverted that thereafter, between the

months of November and April, the plaintiff bought and sold about eight hundred thousand bushels of wheat, two hundred thousand bushels of oats, and about two million bushels of corn, aggregating over three million bushels of grain. Over one-third of the total was bought and sold on the same day. Over two-thirds of the total was closed out in two days. All but one hundred thirty-five thousand bushels was closed out in a week, and with the exception of one transaction involving five thousand bushels, every deal was closed out in two weeks. The magnitude of such transactions, in view of the financial circumstances of the plaintiff, leads to but one reasonable inference, that is that the plaintiff intended and understood that the deals in question should be settled by the payment of differences, and it would be impossible for ordinary and reasonable minds to reach a different conclusion. To bring the transactions within the statute, it was necessary, however, for the plaintiff to establish by the greater weight of the evidence, that such intention not to deliver or receive delivery, was mutual and common to both him and the defendants. Pelouze v. Slaughter, 241 Ill. 215.

It is unnecessary for us to determine whether or not the evidence which the court permitted the jury to consider, when taken as a whole, warranted the court in finding as a matter of law, that such was the intention of the defendants, for the reason that the court improperly excluded competent evidence offered by the defendants and hereinafter referred to, which would have tended to support the contention of the defendants that actual delivery and acceptance was intended by them to be had in each of the transactions. Had the evidence in question been admitted, the trial court could not have, without weighing the evidence, directed a verdict in favor of the plaintiff. The rejected evidence tended to prove that grain of the character ordered,

purchased or sold by the plaintiff and involved in the "speculative account," was in fact purchased or sold as the case might be, and was represented by warehouse receipts which were to be delivered to the defendants under the rules of the Chicago Board of Trade, when the month for delivery arrived, and by them held for the plaintiff's account until the respective purchases or sales were closed out in accordance with the plaintiff's instructions. In the absence of any affirmative evidence of an express understanding or agreement that no deliveries were made or contemplated to be made, the intention of the parties could only be determined from the facts and circumstances surrounding the transaction, and such issue was clearly one for the determination of the jury. The testimony of the witnesses Rennick, Tucker and Smith, as well as the rules of the Chicago Board of Trade, tended, to some extent, to show the intent of the defendants in the transactions, and should have gone to the jury. The mere fact that margins were deposited by the plaintiff with the defendants to protect the transactions in question, or that there were settlements by the payment of differences between the contract price of the purchase or sale and the price at which the commodity of a corresponding character and amount was thereafter either bought or sold, or the fact that some of the purchases and sales were for future delivery, or that they were closed out before the time for future delivery had arrived, did not, as a matter of law, render such transactions void. All of such elements might have been present and the transactions, nevertheless, lawful. Without expressing any opinion as to the probative force or effect of the rejected testimony, we are constrained to hold that the trial judge, to this extent, erred in his rulings upon the evidence.

For the errors indicated, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*